FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 NOV 21  PM 4: 48

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
### DISTRICT OF WYOMING

| | |
|---|---|
| MIKE SNOW, Individually and for Others Similarly Situated, | Case No. 19-CV-241 |
| v. | Jury Trial Demanded |
| SILVER CREEK MIDSTREAM HOLDINGS, LLC and SILVER CREEK MIDSTREAM SERVICES, LLC | FLSA Collective Action Pursuant to § 216(b) |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Mike Snow (Snow) brings this Fair Labor Standards Act (FLSA) lawsuit to recover the unpaid overtime wages and other damages owed to him by Silver Creek Midstream Holdings, LLC and Silver Creek Midstream Services, LLC (collectively, "SCM").

2.      SCM is a private midstream company focused on providing crude oil gathering, transportation, and storage services in Wyoming.[1]

3.      Snow and the other SCM employees regularly work more than 40 hours in a week.

4.      But SCM does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of paying overtime, Snow received a daily rate with no overtime compensation.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.      Venue is proper in this Court because SCM conducts substantial business in this District.

---

[1] http://www.scmidstream.com (last visited October 7, 2019).

8.     Snow performed work for SCM in and around Douglas, Wyoming, in this District.

9.     SCM has an office in Douglas, Wyoming, in this District.

## THE PARTIES

10.    Snow worked for SCM from the beginning of March 2019 until June 2019.

11.    Snow was a welding inspector for SCM.

12.    Snow worked for SCM in and around Douglas, Wyoming.

13.    Throughout his employment with SCM, Snow was paid a day-rate with no overtime compensation.

14.    Snow's consent to be a party plaintiff is attached as Exhibit A.

15.    Snow brings this action on behalf of himself and all other similarly situated workers who were paid by SCM's day-rate scheme.

16.    Each of these workers were paid a flat amount for each day worked and SCM failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

17.    The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors of Silver Creek Midstream, LLC who were paid a day-rate with no overtime in the past 3 years ("Putative Class Members").**

18.    Silver Creek Midstream Holdings, LLC and Silver Creek Midstream, LLC are part of an enterprise consisting of more than one entity.

19.    SCM are Delaware Limited Liability Companies headquartered in Irving, Texas and may be served by serving their registered agent for service of process, Capitol Corporate Services, Inc., 206 9th Street, Suite 1300, Austin, Texas 78701.

2

## COVERAGE UNDER THE FLSA

20.     At all times hereinafter mentioned, SCM has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21.     At all times hereinafter mentioned, SCM has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22.     At all times hereinafter mentioned, SCM has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

23.     At all times hereinafter mentioned, Snow and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

24.     As will be shown through this litigation, SCM treated Snow the Putative Class Members as employees and uniformly dictated the pay practices Snow and its other employees were subjected to.

## FACTS

25.     SCM provides crude oil gathering, transportation, and storage services in Wyoming.

26.     To provide its services, SCM hires personnel (like Snow) to perform work.

27.     Many of these individuals worked for SCM on a day-rate basis and make up the proposed Putative Class.

28.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

3

29.     Because of SCM's day-rate pay practice, Snow and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

30.     Because of SCM's day-rate pay practice Snow and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

31.     For example, throughout Snow's employment with SCM, he was paid on a day-rate basis.

32.     Snow and the Putative Class Members normally worked 10 to 15 hours a day.

33.     Snow and the Putative Class Members would regularly work 7 days a week.

34.     SCM never guaranteed Snow and the Putative Class Members a salary.

35.     SCM never paid Snow or the Putative Class Members on a salary basis.

36.     Snow was required to report the days worked to SCM.

37.     The work Snow performed was an essential and integral part of SCM's core business.

38.     SCM directly determined Snow and the Putative Class Members' rates of pay and his work schedule.

39.     The Putative Class Members worked hours similar to Snow's.

40.     During Snow's employment with SCM, it and/or the company SCM contracted with exercised control over all aspects of his job.

41.     SCM and/or the company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Snow and the Putative Class Members.

42.     Even though Snow often worked away from SCM's offices, SCM still controlled all aspects of Snow's job duties by enforcing mandatory compliance with SCM's and/or its client's policies and procedures.

43.     SCM directly determined Snow's rates of pay and his work schedule while he was working for SCM.

44.     The Putative Class Members were denied overtime by the same illegal pay practice (SCM's day-rate pay scheme) that resulted in Snow being denied overtime wages.

45.     SCM's policy of failing to pay its employees, including Snow, overtime violates the FLSA because these workers are non-exempt.

46.     SCM's day-rate scheme violates the FLSA because Snow and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

47.     As set forth herein, SCM has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

48.     SCM knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

49.     SCM's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

50.     Accordingly, Snow and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

51.     Snow incorporates all previous paragraphs and alleges that the illegal pay practices SCM imposed on Snow were likewise imposed on the Putative Class Members.

52.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

53.     Numerous other individuals who worked with Snow indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

54.     Based on his experiences and tenure with SCM, Snow is aware that SCM's illegal practices were imposed on the Putative Class Members.

55.     The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

56.     SCM's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

57.     Snow's experiences are therefore typical of the experiences of the Putative Class Members.

58.     The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

59.     Snow has no interests contrary to, or in conflict with, the Putative Class Members.

60.     Like each Putative Class Member, Snow has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

61.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

62.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and SCM will reap the unjust benefits of violating the FLSA.

63.     Furthermore, even if some of the Putative Class Members could afford individual litigation against SCM, it would be unduly burdensome to the judicial system.

64.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

65.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

     a.     Whether SCM employed the Putative Class Members within the meaning of the FLSA;

     b.     Whether SCM's day rate pay scheme meets the salary-basis test;

     c.     Whether SCM's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

     d.     Whether SCM's violation of the FLSA was willful; and

     e.     Whether SCM's illegal pay practices were applied uniformly to all Putative Class Members.

66.  Snow's claims are typical of the claims of the Putative Class Members. Snow and the Putative Class Members sustained damages arising out of SCM's illegal and uniform employment policy.

67.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

68.     Therefore, this issue does not preclude class or collective action treatment.

**JURY DEMAND**

69.  Snow demands a trial by jury.

RELIEF SOUGHT

70. WHEREFORE, Snow prays for judgment against SCM as follows:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding SCM liable for unpaid back wages due to Snow and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted this 21st day of November, 2019.

By:

Richard Gage

Richard Gage, WSB #: 5-2759
RICHARD GAGE, P.C.
1815 Pebrican Ave.
P.O. Box 1223
Cheyenne, WY 82003-1223
Telephone: (307) 433-8864
Facsimile: (307) 635-1511

**AND**

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
*(pending pro hac vice)*
Richard M. Schreiber
Texas Bar No. 24056278
*(pending pro hac vice)*
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
*(pending pro hac vice)*
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

# EXHIBIT A

## CONSENT TO JOIN WAGE CLAIM

Print Name: <u>Mike Snow</u>

1.  I hereby consent to participate in a collective action lawsuit against <u>Silver Creek Midstream</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3.  I designate the law firm and attorneys at JOSEPHSON DUNLAP as my attorneys to prosecute my wage claims.

4.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: <u>Mike Snow</u>       Date Signed: <u>Oct 8, 2019</u>